BENJAMIN SMITH

*v.*

BENJAMIN HIGGINS *et al.*

*Filed at Mt. Vernon June 19, 1894.*

1. DEED—*several grantees—presumption as to interests conveyed.* While the conveyance of lands to several grantees without any specification of the interests they are to take, has the effect, *prima facie*, of creating equal interests in the grantees, the presumption that it does so is one which, especially as among the parties themselves, will yield to evidence of the intention of the parties and of the real nature of the transaction.

2. PARTITION—*equitable distribution of proceeds of sale.* Where parties join in an enterprise to secure their respective claims against an insolvent debtor, and thereby acquire title in common to lands, upon sale of such lands in partition, the law, in the absence of agreement, will repay the parties their respective advances with

interest to date of repayment, and divide the residue, if any, among the parties, in proportion to their respective claims sought to be secured.

3. PARTIES—*distributees should be made parties.* A judgment creditor of a party in a partition suit whose claim is to be paid in the distribution, should be brought before the court, so that the amount remaining due upon his judgment may be ascertained.

APPEAL from the Circuit Court of St. Clair county; the Hon. B. R. BURROUGHS, Judge, presiding.

Messrs. G. & G. A. KOERNER, for the appellant.

Mr. WILLIAM WINKELMAN, for the appellees.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This was a bill in chancery, brought by Benjamin Smith against Benjamin Higgins and Joseph Ogle, for an accounting, for an injunction to restrain the prosecution of a suit at law, and for a partition of certain real estate. The facts, as shown by the pleadings and proofs, are these : In October, 1886, Russell Hinckley was indebted to Higgins in the sum of $11,700, to Ogle in the sum of $10,000, and to Smith in the sum of $2728. Hinckley was then insolvent, and had executed a voluntary assignment of all his estate for the benefit of his creditors. The property thus assigned was of great value, and had been advertised by the assignee for sale at public auction, under the order of the county court, and it was feared by the parties to this suit, who were among Hinckley's largest creditors, that the property would be sacrificed at such sale, and would fail to realize the amounts due them, respectively.

It being ascertained that Hinckley could compromise with his other creditors for $30,000, Smith, Higgins and Ogle agreed among themselves to advance Hinckley that sum, upon his securing it to them, together with what he already owed them, by deeds of trust on his real estate. They accordingly borrowed $30,000 of the First National

Bank of Belleville, and executed therefor their three joint promissory notes, each for the sum of $10,000, each signing one of the notes as principal and the others 'signing as sureties.    Hinckley and wife thereupon executed to G. A. Koerner, as trustee, deeds of trust, conveying a large amount of real estate situate in the counties of St. Clair, Clinton, Marion, Fayette and Wayne, to secure both the money advanced and the original indebtedness, viz., $12,728 to Smith, $21,700 to Higgins and $20,000 to Ogle. These deeds of trust were thereupon deposited with the bank as collateral security for the loan.

It seems that the loan was divided into three sums of $10,000 each, and secured by three notes executed in the manner above stated, at the instance of the cashier of the bank, so as to avoid the appearance of loaning more than $10,000 to any one party, but there seems to have been no express agreement among Smith, Higgins and Ogle, beyond what was evidenced by the notes themselves, as to the proportions in which the parties should, as among themselves, be held liable for the repayment of the loan.  Smith, in his bill, alleges that the understanding was that, as among themselves, they should be responsible for the loan, in case the mortgaged property should be insufficient to pay it, in proportion to their respective interests,—that is to say, in proportion to the respective amounts of Hinckley's indebtedness to them,— and that, in case there should be any surplus, their interests should be in the same proportion.    This the defendants in their answer deny, their version of the transaction being, that each of the parties borrowed individually the sum of $10,000, and that there was no agreement among them that their liability should be in proportion to Hinckley's indebtedness to them.

On the first day of November, 1887, a suit was instituted in the circuit court of St. Clair county for the foreclosure of the deeds of trust, to which suit Hinckley and wife, and Koerner, Smith, Higgins and Ogle, and others,

were parties, and such proceedings were had in the suit, that at the May term, 1888, of the court, a decree was rendered therein, whereby the court, among other things, found that, at the date of the decree, there was due and unpaid from Hinckley to Smith the sum of $12,897.13, and also the sum of $389 advanced by him for the payment of taxes on the mortgaged property; to Higgins the sum of $23,047.93, and also the sum of $1254.93, in like manner paid by him for taxes; and to Ogle the sum of $20,823.29, and $763.02 paid for taxes. Also, that there was due to the bank on the three promissory notes the sum of $30,437.50, and that the bank held the deeds of trust as collateral security for the payment thereof. The decree ordered that the deeds of trust be foreclosed, and that the lands therein described be sold by the master, and that out of the proceeds of the sale the master retain his fees, disbursements and commissions and pay the costs of the suit; that he then pay to Smith, Higgins and Ogle the sums advanced by them, respectively, for the payment of taxes on the mortgaged premises, with interest thereon, and that out of the remainder he pay to said First National Bank of Belleville said sum of $30,437.50, with interest from the date of the decree, and that he pay the residue, if any, to Smith, Higgins and Ogle, as in the decree found by the court, and in case there was not a sufficient sum to pay them in full, that they be paid in proportion to the respective sums found due to them.

It appears that at the sale under this decree some of said land was struck off and sold to outside parties, but that of much the larger portion, for which $49,080 was bid, Smith, Higgins and Ogle became the purchasers, and that master's deeds were executed conveying the land to them, without designating the amount of interest to which each was entitled. The purchase money for the land was not paid by them to the master in chancery, but was by the master credited on the amounts due them, respectively, as found by the decree.

Higgins and Ogle paid the amounts of their $10,000 notes to the bank, the amount paid by each being $10,-269.27. Smith also paid his note, but to enable himself to do so he borrowed of Higgins money to pay certain installments of interest, and executed to him his promissory note therefor, and also borrowed of the Belleville Savings Bank the sum of $5000. The bill alleges that the note to Higgins had been put in suit in the name of William Winkelman, but for the use of Higgins, and the complainant prays to have the prosecution of that suit restrained, pending the accounting. A considerable amount of the lands purchased by Smith, Higgins and Ogle has been sold, and for such sales there has been realized the sum of $22,399.95, which has been distributed among the parties, as follows: to Smith $7304.86, and to Higgins and Ogle each the sum of $7547.54. A portion of the proceeds of these lands remains undistributed and a portion of the lands remains unsold, and the object of the present bill is to obtain an accounting and distribution of the avails of the lands remaining undistributed, and to have the respective interests of the parties in the lands remaining unsold ascertained and declared, and to have partition of these lands made in accordance with their respective interests.

The court decreed that from the funds to be realized from the lands, Smith was entitled to receive the sum of $2904.41, and that Higgins and Ogle were each entitled to receive the sum of $2721.73, so as to make the amount distributed to each equal to the sum of $10,269.27, and thus fully reimburse them for the money paid by them, respectively, in satisfaction of the $30,000 loan from the bank; that they should next be entitled to be paid the amounts advanced by them, respectively, for taxes and interest thereon, and that they were entitled to share in the residue of the proceeds of the lands in proportion to the amounts of the original indebtedness from Hinckley to them.

The court further found, from the evidence heard and the admissions made in open court, that the lands remaining unsold were so situated that partition and division thereof could not be made without manifest prejudice to the proprietors thereof, and that the parties to the suit consented to and requested a sale thereof by the master, the parties expressly waiving the appointment of commissioners to make partition and to appraise the lands, and admitting that the lands were of the value of $20,000. It was thereupon ordered and decreed that the lands be sold at public auction to the highest bidder, but not for less than two-thirds of the sum of $20,000.

The court also found that, prior to the date of the decree, the Belleville Savings Bank had recovered judgment against Smith in the circuit court of St. Clair county for $5290 and costs, and that Winkelman had also recovered a judgment against him in that court for $820 and costs, and that these judgments were liens on Smith's interest in the lands. The master was therefore ordered to distribute the proceeds of the sale of the lands, after paying costs and the expenses of the sale, according to the rights of the parties as determined by the decree, except that the payments to be made to Smith were ordered to be applied, *pro rata*, to the satisfaction of the judgments against him. From this decree Smith has appealed to this court.

The main contention is, that the court adopted an incorrect basis in ordering distribution among Higgins, Smith and Ogle, of the proceeds of the lands. The determination of the question thus presented, must, of course, depend upon the relative equitable rights of these parties in the lands themselves, as shown by all the evidence in the case.

When the cause was first presented to this court, the view seems to have been urged that because the three associates purchased the lands at the foreclosure sale, and received from the master deeds purporting to convey

the lands to them as tenants in common, they therefore should be held to own them in equal proportions, and be entitled to share equally in the distribution of the proceeds thereof when sold. While a conveyance of lands to several grantees without any specification of the interests they are to take, has the effect, *prima facie,* of conveying to them as tenants in common with equal interests, the presumption that it does so is one which, especially as among the parties themselves, will yield to evidence of the actual intention of the parties and of the real nature of the transaction. The circumstances under which the lands in question were bid off by the three associates at the foreclosure sale, and the purpose sought to be accomplished in doing so, being undisputed, the mere fact that the land was conveyed to them by the master without designating their respective equitable interests is of little moment in determining any question here. Their interests, as among themselves, must be determined in the light of the entire transaction.

But it is said that Smith was held to pay one-third of the consideration of the lands, and that he should, therefore, be entitled to one-third of the proceeds resulting from their sale. If the fact were as here supposed, it may be the result contended for would follow; but as we understand the record such is not the case. The lands bid for by Smith, Higgins and Ogle were not paid for in money at the time. The court, in the foreclosure decree, found the amount of Hinckley's indebtedness to each of the parties, such indebtedness being ascertained by adding the original indebtedness to that portion of the $30,000 loan which each had obligated himself to pay, and payment of the amount bid for the land was made by crediting the amount bid on the Hinckley indebtedness as found by the decree. The record does not specify the precise way in which such credits were made, but the fair presumption is that the credits were distributed upon

the debts found to be due to each of the said parties, in proportion to their respective amounts.

The true view would seem to be that, the three having joined in an enterprise which had for its object the securing, so far as possible, of their respective demands against an insolvent debtor, there being no express agreement on the subject, the agreement that the law implies is, that the results of the enterprise should be appropriated first to the reimbursement of all advances and expenditures made by the associates, or any of them, with interest, and that the residue, if any, should be divided among them in proportion to the amount of the respective claims thus sought to be secured.

The appellant, in his petition for a rehearing, seems to concede the justness of this view, but claims that the court failed to properly apply it in that portion of the decree awarding distribution of the proceeds of the lands. He now concedes that the court properly ordered distribution of the surplus, after reimbursing the associates for the moneys advanced by them, and interest, in proportion to the amount of their original claim against Hinckley, but he contends that the court adopted an incorrect and unjust basis in determining the amount due to the parties on account of the moneys borrowed by them from the bank and used in compromising with the other creditors of Hinckley. The view taken by the court seems to have been that they were each entitled to be reimbursed the amount of the $10,000 loan, and interest up to the time that loan was repaid to the bank, while the appellant insists that interest should be allowed up to the time of the repayment of the money borrowed, to the associates, out of the proceeds of the lands.

As each borrowed $10,000 from the bank, and as each provided for the repayment of his own loan, the source from which the money was obtained may be disregarded, and their rights may be viewed in precisely the same

light as though each had advanced.$10,000 from his own funds and applied the money to the same purposes. In that view it is manifestly equitable to reimburse the parties for the money advanced, and interest thereon, not to the time the money was repaid to the bank, but to the time their advances were or may be repaid to them, by the distribution to them of the proceeds of the land. After the advances are repaid to them in full, with interest to the date of repayment, it is equitable and proper that the surplus should be divided in the proportion of the original claims of the parties against Hinckley. We think therefore, that in this respect the decree is erroneous.

It is urged that the decree is erroneous because it directs the payment of money to Smith's judgment creditors, who are not parties to the suit, and are, therefore, not before the court. The suggestion is made, although based upon no proof appearing in the record, that these judgment creditors have levied their executions upon other lands, and have thereby satisfied their judgments. Whether this is so or not, it would seem to be the safest and most advisable course for all the parties, to have these judgment creditors brought before the court, so that the amount still remaining due upon their judgments may be ascertained before any distribution to them is awarded. As the decree must be reversed for the error above indicated, the court below will be directed to take such proceedings as will bring the judgment creditors properly before the court, so that their rights may be ascertained and determined.

The decree of the circuit court will be reversed, and the cause will be remanded for further proceedings by that court in conformity with the views expressed in this opinion.

*Decree reversed.*